Brett D. Cragun (#8683)
CRAGUN & CRAGUN
PO Box 160234
Clearfield, UT 84016
T: (801) 513-2060
F: (801) 513-2082
E: Brett@BrettCragun.com

*Attorneys for Plaintiff,*
*Kimberly Ann Kuchler*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| KIMBERLY ANN KUCHLER,<br><br>    Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>    Defendant. | **Case No.:**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1.    This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

### PARTIES

2.    Plaintiff Kimberly Ann Kuchler ("Plaintiff") is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c) and resides in Pleasant Grove, Utah.

3.    Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa

1

Mesa, California 92626 and can be served through C T Corporation System at 330 North Brand Boulevard, Glendale, California 91203.

## JURISDICTION AND VENUE

4.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5.    Venue is proper in this District under 28 U.S.C. §1391(b)(2).

## FACTS
### Plaintiff's Deceased Notation

6.    Plaintiff and her late husband held one joint account with Mountain America Federal Credit Union ("MAFCU").

7.    In 2021, Plaintiff's husband passed away.

8.    Plaintiff notified MAFCU, about his death.

9.    At that time, Plaintiff believed her credit was in good standing.

10.    In May 2024, Plaintiff applied for a loan with MAFCU.

11.    MAFCU performed a hard inquiry on Plaintiff' credit report to check if she was qualified for the loan.

12.    The hard inquiry from MAFCU appears on Plaintiff's Experian Credit Report dated May 23, 2024 ("Experian Report").

13.    Plaintiff was verbally informed by an employee at MAFCU that her Experian credit score was listed as "1".

14.    Plaintiff was also simultaneously shown by the employee an internal screen at MAFCU showing a credit score of "1."

15.    The MAFCU employee stated that she was unaware as to why the Experian credit score was being reported as "1."

2

16. Her application for the loan was denied.

17. No written denial was provided to Plaintiff from MAFCU.

18. Plaintiff was not informed that a score of "1" represented that she was being reported as deceased.

19. In October 2024, Plaintiff was involved in a car accident which totaled her vehicle.

20. Following the accident, Plaintiff again contacted MAFCU to inquire about an auto loan.

21. On March 18, 2025, MAFCU initiated a soft inquiry into Plaintiff's credit history.

22. This time, again, she was told by MAFCU that her Experian score was "1".

23. Concurrently, Plaintiff was told that her other credit scores exceeded the scores necessary for loan approval.

24. Plaintiff, again, did not receive any written denial.

25. Plaintiff was forced to deplete her savings to buy a replacement car.

26. Rather than having the opportunity to finance her 2024 Ford Edge, Plaintiff was forced to deplete savings to purchase the car - a significantly frustrating event because Plaintiff had to deplete her nest egg for a car she could have financed over time without having the additional financial pressure.

27. Unaware of the deceased notation and riddled with worry and concern, Plaintiff reached out to Triad Credit for help.

28. A Triad Credit employee advised her to contact Experian directly and to dispute the issue.

29. In turn, Plaintiff contacted Experian multiple times to dispute the deceased notation.

3

30.    The deceased notation was not removed or updated by Experian in response to these disputes.

31.    On June 5, 2025, Plaintiff's credit card application with Capital One was denied.

32.    Plaintiff did not receive a denial letter from Capital One.

33.    A soft inquiry from June 5, 2025 appears on Plaintiff's Experian Report.

34.    On June 12, 2025, Plaintiff obtained a physical copy of the Experian Report.

35.    The Experian Report contained a deceased notation associated with an MAFCU account.

> Partial Acct #: 9803154…
> Date Opened: Apr 2014
> Type: Credit card
> Responsibility: Deceased

36.    The report also reflects the following inquiries:

> May 23, 2024: Hard Inquiry by MAFCU
> March 18, 2025: Soft Inquiry by MAFCU
> June 5, 2025: Soft Inquiry by Discover

37.    By letter dated June 17, 2025, Experian informed Plaintiff that "the Social Security number that [Plaintiff] gave [Experian] when [Plaintiff] contacted [Experian] had been reported by the Social Security Administration as deceased."

38.    In that same letter, Plaintiff was notified that her Social Security death benefits were being paid out. and was told at one point that someone had been using her Social Security benefits.

39.    Bewildered, Plaintiff contacted the Social Security Administration.

40.    The Social Security Administration confirmed that her benefits were secure, her SSN was active, and her SSA account remained accessible.

41.    The Social Security Administration further informed Plaintiff that she was not

being, nor had ever been, reported as deceased.

42. Despite Plaintiff's repeated efforts, upon information and belief, Defendant failed to correct the inaccurate reporting on multiple occasions.

43. Plaintiff disputed again through Triad Credit.

44. In response to this dispute, Experian resolved the issue and removed the deceased notation.

45. By insertion of the "deceased" notation, Defendant made it practically impossible for Plaintiff to continue to obtain credit.

46. As a result of the deceased notation, Defendant has spent approximately $730 with Triad Credit attempting to correct the error.

47. The inability to access financial institutions for debit and credit lines has significantly hindered Plaintiff's financial position.

48. Plaintiff now struggles to make ends meet while trying to overcome her health issues and does not have savings to fall back on.

49. Plaintiff now lives in worry of how to get by month-to-month under the pressure of minor mistakes having life-changing impact.

50. Plaintiff is currently renting a room from a friend because that is all she can afford due to her current financial position.

51. Plaintiff's husband passed away, causing her stress and anxiety.

52. The stress associated with the deceased notation on Plaintiff's consumer report significantly exacerbated Plaintiff's stress and anxiety, culminating in a heart attack in December of 2024.

53. Plaintiff was seen by a medical doctor regarding the physical manifestation of stress and anxiety caused by the deceased notation on her Experian Report. Specifically, Plaintiff believed that she was having a second heart attack.

54. Plaintiff's treating physician stated that she was not having a heart attack, but that her blood pressure was high.

55. Plaintiff's treating physician noted that the elevated blood pressure levels were a result of stress and anxiety.

56. Plaintiff's treating physician prescribed Plaintiff two different anti-anxiety medications to cope with the stress and anxiety caused by Experian's inaccurate reporting.

57. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

58. At all times pertinent hereto, the conduct of Defendant, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

59. Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower their costs. Accordingly, Defendant's violations of the FCRA are willful.

60. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of labor, time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, stress,

6

anxiety, loss of sleep, hospital visits, anguish, humiliation, and embarrassment of credit denials.

## COUNT I
## 15 U.S.C. § 1681e(b)
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

61.    Plaintiff reincorporates the preceding allegations as if stated herein.

62.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and consumer files it published and maintained concerning Plaintiff.

63.    Defendant's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

64.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 14, 2025

By: */s/ Brett D. Cragun*
Brett D. Cragun (#8683)
CRAGUN & CRAGUN
PO Box 160234
Clearfield, UT 84016
T: (801) 513-2060
F: (801) 513-2082
E: Brett@BrettCragun.com

*Attorneys for Plaintiff,*
*Kimberly Ann Kuchler*